George B. Newhouse, Esq. (State Bar No. 107036)
**RICHARDS CARRINGTON, LLC**
545 S. Figueroa Street, 7th Floor
Los Angeles, California, 90071
Telephone: (213) 348-9016
Facsimile: (213) 349-9017
george@richardscarrington.com
Attorneys for *Eric Christie*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 22-mj-5016 |
| ) | |
| Plaintiff, ) | MOTION FOR RECONSIDERATION |
| ) | OF ORDER OF DETENTION [ECF 6] |
| v. ) | |
| ) | Date: To be set. |
| ERIC CHRISTIE, ) | Courtroom: Roybal - 880 |
| ) | Judge: Hon. Alka Sagar |
| Defendant. ) | |
| ) | |

    Eric Christie, through his counsel of record, respectfully requests reconsideration of the Court's Order of Detention [ECF 6], on the ground that it reflects an error of law and on additional evidence rebutting risk of flight.

    This motion for reconsideration is based on the Court's Order of Detention (ECF 6) filed on December 23, 2022, following a detention hearing before Magistrate Judge Alka Sagar, this Memorandum of Points & Authorities, the declarations of George B. Newhouse, Jr., and exhibits, and declarations of Michael Christie and Yvet Chambers, demonstrating the Defendant Christie is neither a flight risk nor a danger to the Community should he be released on bail.

i

Dated: January 11, 2023

Respectfully submitted,

RICHARDS CARRINGTON LLC

By: /s/ *George B. Newhouse, Jr.*
      George B. Newhouse, Jr

**TABLE OF AUTHORITIES** ................................................................................................iii

**MEMORANDUM OF POINTS & AUTHORITIES** ................................................... 1

**I.   Introduction and Summary of Argument** ....................................................... 1

**II.  Mr. Christie's Charges Hardly Justify the Overwhelming Use of Force Deployed in Effecting an Arrest by the Swat Team** ................................................... 3

   A.   Criminal Charges Filed in District of Columbia. ............................................ 3

   B.   Christie's Arrest Was a Carefully Orchestrated Event Designed to Create a False Basis for Asserting that Christie Poses a Danger to the Community Despite the Fact That He Is Not Charged with Violent Offense. .. 5

   C.   The Court's Decision Failed to Take Into Account Many Reasons Why Mr. Christie *I*s Not a Flight Risk, No Less a "Serious Risk of Flight" under section 3142(f) ............................................................................................... 7

   D.   There Is No Serious Risk of Flight Given the Circumstances of This Case, Mr. Christie's Personal History, the Likelihood of At Most a Short Custodial Sentence Considered in the Context of the Conditions that Defendant Would Agree to Comply With. ................................................... 9

# TABLE OF AUTHORITIES

Cases

*United States v. Byrd*, 969 F.2d 106 (5th Cir.1992) ............................................................. 9
*United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005) ........................ 2
*United States v. Himler*, 797 F.2d 156 (3d Cir.1986) .......................................................... 9
*United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cr. 2000) ................................. 2
*United States v. Ploof*, 851 F.2d 7 (1st Cir.1988) ............................................................... 9
*United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (*per curiam*), *reh'g en banc denied*, 362 F.3d 1163 (2004) ................................................................................. 3, 8

Other Authorities

Fed. R. Crim. P. 57(b) .................................................................................................. 6

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Eric Christie was arrested on December 22, 2022, at his condominium in Sherman Oaks, CA by an FBI swat team that planned the event carefully to create a "crisis" in arresting Christie, an alleged January 6th participant. The service of the arrest warrant, which coincided with a search warrant for his premises, was planned so carefully that the FBI summoned four "crisis negotiators" to the scene *before* it bombarded Mr. Christie's apartment by knocking down his door, breaking windows and skylights with drones and releasing tear gas into the home – all without any effort to contact the resident before hitting the premises with such force. (See Declarations of Yvet Chambers ("Chambers Decl."), Michael Christie ("Christie Decl.") and George B. Newhouse, Jr. ("Newhouse Decl." filed in support of this motion.)  The Defendants' arrest safely effected, the government immediately moved for detention under 18 U.S.C. section 3142(f)(2), and a hearing was held on December 23, 2022 before the Hon. Alka Sagar, United States Magistrate Judge.

After conducting the hearing, the Court detained Mr. Christie based on a finding of dangerousness and a finding of a "serious risk that the defendant will flee." (ECF 6, pg. 2.)  The Court also based its detention order on a finding that "no condition or combination of conditions will reasonably assure "the appearance of the defendant as required" by the district court in Washington DC. We respectfully but strongly disagree.

For the reasons that follow, the defense requests reconsideration of this Order on the grounds of legal error *and* changed circumstances, specifically a showing that there is no basis for a finding of a "serious risk of flight" – or any flight risk – and that with the availability of ample bail resources any conceivable risk of flight can be mitigated.  Nor is there a legitimate concern for the safety of the community based

on the record before the court.[1]  Mr. Christie has no criminal record.  He is not charged with a crime of violence, a crime that would involve a "presumption of dangerousness" nor were there any circumstances arising from his orchestrated arrest by the FBI Swat Team on December 22, 2023 that either amounts to a crime or would possibly give rise to a realistic concern that Mr. Christie, if released on terms and condition of bail, would remotely pose a threat to any person in the community – or to anyone, anywhere.  Mr. Christie's alleged crime, in essence, was illegally protesting on the grounds of the Capitol on January 6, 2021(criminal trespass) in an area that was restricted to persons other than the public when the Vice-President was expected to be in the area.  Mr. Christie hurt no one, threatened no one and is not facing, even if convicted, a significant jail sentence given the sentences handed down in the past two years to January 6th protestors.  (*See* Newhouse Decl., Exhibit 1, chart of sentences received by Jan. 6th defendants.)

      In the course of reaching a contrary conclusion, the Court after an evidentiary hearing, and reviewing a flawed report by the Pre-Trial Services agency that minimized, if not essentially ignored, Mr. Christie's strong ties to the community, his home ownership in Los Angeles, his stable long-term employment while dwelling on other factors (*i.e.*, supposed risk factors) that could be mitigated with sensible – indeed ubiquitous —pre-trial release conditions, e.g.: (1) intensive PSA supervision by pre-trial services officers, (2) a ban on possession of firearms, (3) travel restrictions enforced with standard GPS monitoring technology; and (4) substantial surety bonds that Mr. Christie and his family members are willing, able and prepared to furnish  -- primarily a secured bond that would render any non-compliance with

---

[1]  Although not expressly authorized by the Federal Rules of Criminal Procedure, reconsideration motions are permitted.  *See, e.g., United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cr. 2000) ("motions for reconsideration may be filed in criminal cases"); *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005) (motion to reconsider order denying suppression), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 20007); *see also* Fed. R. Crim. P. 57(b) ("Procedure Where There is No Controlling Law… A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district").

release conditions untenable if not utterly irrational. In short, a man with virtually no criminal record, who is accused of a crime not involving violence, guns or drugs, ***in effect not a serious crime likely to lead to years of incarceration***, is not going to make his legal problems substantially worse by failing to adhere to strict, pre-trial conditions of release. Who would put his livelihood and home in jeopardy under such circumstances?

    The court, with all due respect, gave short shrift to the ready availability of ample conditions and combinations of conditions at the government's implicit suggestion that Mr. Christie deserves punishment for his alleged crimes more than two years ago at the U.S. Capitol. The Court's order, in short, violates Mr. Christie's Eighth Amendment and statutory rights favoring release on bail in federal court for defendants who do not, *realistically,* present a serious risk of flight or dangerousness.

    Denying Mr. Christie, a release on bond in this case, moreover, violates established legal authority in this circuit since there has been no showing whatsoever that he is, indeed, a flight risk. See *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (*per curiam*), *reh'g en banc denied*, 362 F.3d 1163 (2004) (finding of dangerousness alone cannot support detention where the case involves neither a crime of violence nor an offense enumerated in Section 3142(f)). In short, as demonstrated below the Court should reconsider its detention order and order Mr. Christie released on bond – with the usual terms and conditions that invariably address anything short of a serious risk of flight.

## II.  MR. CHRISTIE'S CHARGES HARDLY JUSTIFY THE OVERWHELMING USE OF FORCE DEPLOYED IN EFFECTING AN ARREST BY THE SWAT TEAM

### A. Criminal Charges Filed in District of Columbia.

On December 15, 2022, *nearly two years* after the January 6, 2021 disturbance at the U.S. Capitol the U.S. DOJ filed a criminal complaint against Defendant Christie, alleging violations of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) - Entering and

Remaining in a Restricted Building or Grounds with a Deadly Weapon); and 18 U.S.C. § 1752(a)(2) and (b)(1)(A)- Disorderly or Disruptive Conduct in Restricted Building or Grounds with a Deadly Weapon. *See* 22-mj-00274-RMM ECF No. 1. The Complaint was supported by a Statement of Facts by Special agent Kyle Hicks of the FBI. (Id.).

    The Statement identifies a photograph of Christie as being sent to different defendant in the January 6 Investigation, supposedly sent on November 14, 2020. It does depict Mr. Christie at the steps of the Supreme Court wearing a politically provocative shirt. Other images embedded in the Statement purport to show Mr. Christie at the Outside of the Capitol, including one that allegedly shows an individual the government claims is Christie atop a vehicle parked on the Capital grounds with a bullhorn in his hand. The Statement relates the following: "CHRISTIE is perched above the large crowd that has gathered and is addressing the crowd through his bullhorn. CHRISTIE can be heard saying "it's a MAGA party, it's a MAGA party," "welcome to MAGA country, District of Columbia," "come on, you can come up… It's your house," "You're invited, it's your house," and "Beverly Hills in the house." (Id at p. 6) The special agent relates further: "Due to the location of these vehicles within the security perimeter of the restricted area on January 6, 2021, and the license plates visible in the referenced video, your affiant believes these to be government vehicles." Finally, the government claims to have photographs of Christie outside the Capitol with a red hammer tucked in his belt.

    Christie is not claimed to have committed any act of violence while at the Capital, nor is it alleged that he threatened, deployed or hurt anyone with the hammer. Nor is it alleged that Christie entered the Capital building during the disturbance. In fact, he did none of these things.

B. **Christie's Arrest Was a Carefully Orchestrated Event Designed to Create a False Basis for Asserting that Christie Poses a Danger to the Community Despite the Fact That He Is Not Charged with a Violent Offense**.

As noted, Mr. Christie was arrested by an FBI swat team at his residence on December 23, 2022. The government arrived that morning around 9:00 a.m. and immediately, without warning, notice or even a knock on the door announcing their presence, broke down Mr. Christie's door, broke skylights and a glass side door and deployed both drones and tear gas. (Decl. of Yvet Chambers, ¶5) Mr. Christie was of course terrified and traumatized by the assault. He immediately called his lawyer who advised him to stay inside and remain calm. Mr. Christie thus was initially reluctant to leave his condominium apartment because there were armed SWAT officers outside (and surrounding the building). In the words of a friend who the FBI put on the phone with Mr. Christie, "he said they have 'busted down the door' and there is a drone in his apartment. He sounded terrified." (Id.) It took several hours to calm Mr. Christie down sufficiently to talk him out of the apartment without his weapons in hand so he could surrender to the FBI. (See id.)

As Ms. Chambers recounts: "At no point during the two hours that Mr. Newhouse and I were on the phone with Eric, did he ever threaten to use his firearms. Attorney Newhouse and I frequently urged him calm down – he was literally screaming -- and leave the apartment unarmed. At no point did Eric ever say anything to the effect that 'You better come in here shooting'" (Id at ¶7), as the FBI's "Operations Log" falsely recites. Had Mr. Christie said that both attorney Newhouse and Ms. Chambers "would have heard that and responded to it." The statement is untrue.

It was also untrue to state as the FBI's witness SA Eric Turner falsely testified that Mr. Christie had "barricaded" himself inside his apartment that morning. As Ms. Chambers remarked in rebuttal in her declaration:

"At no point during the two hours plus that I was on the phone was there any discussion about Eric being "barricaded" in the

5

apartment. This is another false statement as the FBI broke his door down and could physically have entered the apartment at any time. After the agents entered and searched the apartment, I entered to secure it and found no evidence of any "barricade." (Chambers Decl. ¶ 10)

There was no reason to deploy the overwhelming and terrifying use of an FBI Swat Team to effect Mr. Christie's arrest on December 22, 2022 – nearly two years since he allegedly unlawfully protested on the grounds of the Capitol, just as there was no justification for the FBI to lie about a "barricade" in the apartment except in an attempt to create a false impression of dangerousness. On cross-examination, the court may recall SA Turner admitted that by "barricade" he meant only the Mr. Christie refused to leave his home that morning – Christie was terrified, of course, but refusing to budge is not the same as a barricade. According to Merriam & Webster dictionary, the noun *barricade* means "a defensive barrier hastily constructed, as in a street to stop an enemy" or "any barrier that obstructs a passage." In this case, the only thing separating Mr. Christie from the would be arresting officers was a door that had already been broken down.

It is clear from the "Statement of Facts" providing the legal basis for filing the charge against him that Mr. Christie's actions were well known to the FBI for several years *after* he showed up to trespass and protest on the grounds of the Capitol (supposedly with a "dangerous weapon" tucked in his belt). Why was Christie, purportedly a danger to the safety and security of the community, not the subject of an immediate arrest warrant after the events of January 6, 2021? Why did the government not arrest him in *2021* – or thereafter -- as they have with hundreds of other "rioters" who took place in the disturbance at the Capitol on January 6? These facts were well known to the government, yet there was apparently no exigency for two years necessitating his arrest. We do know that Mr. Christie was served with a grand jury subpoena to appear before a Washington DC grand jury in or about *February 2022* (see Exhibit 1 to the Government's 12/23 exhibit binder) as to which there was no follow up when Mr. Christie allegedly did not appear. The "crisis," in

short, necessitating the arranged arrival of FBI Swat and the Crisis Negotiation Team (i.e., they were summoned to Christie's residence in advance of the crisis) was created, and managed, by the FBI. It should not be used, as the government did here to manufacture a basis for denying Mr. Christie the right to a reasonable bail purportedly on grounds of dangerousness.

### C. The Court's Decision Failed to Take Into Account Many Reasons Why Mr. Christie *I*s Not a Flight Risk, No Less a "Serious Risk of Flight" under section 3142(f)

With respect, the Court's decision with as to both flight risk and dangerousness should be reconsidered as contrary to the evidence and applicable law. The Court stated in Section III of its ruling:

> "The Court has considered: (a) the nature and circumstances of the offense(s) charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (b) the weight of evidence against the defendant; (c) the history and characteristics of the defendant; and (d) the nature and seriousness of the danger to any person or the community. [18 U.S.C. § 3142(g)] The Court also considered all the evidence adduced at the hearing including the arguments of counsel, and the report and recommendation of the U.S. Pretrial Services Agency."

These factors merit a closer examination.

**Factor (a).** With respect to the "nature and circumstances of the offenses" the court did not observe, apparently, that the Defendant's January 6th alleged offense was not "a crime of violence, a Federal crime of terrorism, [nor did it] involves a minor victim or a controlled substance, firearm, explosive, or destructive device," factors that would certainly have been germane to the detention calculus but inapplicable here. None of these factors, applied to Mr. Christie's alleged crimes in the Capitol as the government must admit. None of those crimes is likely to elicit a long and serve sentence as shown in our Sentencing Chart filed herewith.

**Factor (b).** The weight of the evidence for the sake of argument (for an offense that has led to custodial sentences of less than 90 days for most January 6th defendants (*See* Newhouse Decl., Ex. 1.)

**Factor (c)**. Nor did the court give appropriate weight to "the history and characteristics of the defendant," as these factors strongly support a release on conditions of bail. The evidence there is not in dispute: the Defendant has strong family connections in Los Angeles (as attested to by his brother Michael, *see* Christie Decl.); the defendant has virtually no criminal record (one ten year old infraction does not a criminal record make); he has never hurt anyone, never threatened anyone. Mr. Christie legally possessed two firearms, which were validly registered to him; and he has no history of violating court orders, so there is no reason to believe that he would do so here. He owns real estate worth in excess of $500,000 and has a track record of stable employment, a job that he will surely lose if not released on bail, and of course if released on bail but violates the conditions, he will certainly lose that job. These factors, not only do <u>not</u> support an inference of flight risk, objectively considered, these factors support the contrary conclusion: Christie will appear for all appearances in DC and comply with all terms and conditions of the release order. It would be utterly irrational of him to do otherwise.

**Factor (d)**. The nature and seriousness of the danger to any person or the community that would be posed by the person's release. Under the law, this is an important consideration for the court. But here there is no reason for the court to be concerned about Mr. Christie presenting a danger to the community if released on bail. <u>Respectfully, there is **no** risk of this</u>. Mr. Christie is not charged with a crime of violence, terrorism, gun violations, drug dealing or anything that would objectively – if the court separates the alleged crime involving January 6 disturbances – portend a risk of dangerousness. But even if there was a reasonable concern about dangerousness, which there is not, the law in this circuit is clear: a defendant cannot be detained on some speculative concern over dangerous propensities in the absence of a realistic and *serious flight risk* of flight.

In this case, no showing has been made as to flight risk – certainly not a showing of a "serious risk" of flight[2], and thus the law requires the Court to set a reasonable bail that the defendant can meet. *See United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (*per curiam*), *reh'g en banc denied*, 362 F.3d 1163 (2004). In *Twine*, the defendant was charged with being a felon in possession of a firearm and the government moved for detention, arguing that his release posed a danger to the community. The district court granted the motion, but the Ninth Circuit reversed: in and in so doing, stated: "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue. *See United States v. Byrd*, 969 F.2d 106 (5th Cir.1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir.1988); *United States v. Himler*, 797 F.2d 156 (3d Cir.1986). In short, where the criminal case involves neither a crime of violence nor an offense enumerated in Section 3142(f)) – and this one does not – the defendant is statutorily entitled to a release on conditions and combinations of condition. This is that case.

### D. There Is No Serious Risk of Flight Given the Circumstances of This Case, Mr. Christie's Personal History, the Likelihood of At Most a Short Custodial Sentence Considered in the Context of the Conditions that Defendant Would Agree to Comply With.

The Court's Order of Detention based its findings that the Defendant would be "likely to flee" -- on the following factors, some of which we would respectfully ask the Court to reconsider:\

> "Defendant has a history of resisting law enforcement contacts and failing to abide by orders from law enforcement, including failure to abide by instructions to turn off his vehicle and step out of his car during a traffic stop even after being informed that he was not free to

---

[2] A mere risk of flight is not sufficient under 18 U.S.C. §3142(f)2(A). The government's burden is to establish a "serious risk" of that such person will flee. In this case, there is no risk, and certainly not a "serious" risk given the conditions available to the court to secure the defendant's compliance.

9

leave. Based on this history of prior law enforcement contacts, a SWAT team was used to effectuate Defendant's arrest. During the attempted arrest at Defendant's residence, Defendant refused to leave his residence without weapons, possessed a gun in his hand which was pointed at the entrance to his residence, and told law enforcement officers they "better come in here shooting." Even after the arrival of Defendant's attorney, friends and family members, who asked Defendant to come out of his residence unarmed, Defendant refused to do so for a period of two hours[3], claiming that the FBI had no lawful authority and that the search warrant was not valid, despite his attorney's assurance that the search warrant was validly issued, and that Defendant should surrender. When Defendant was handcuffed by law enforcement agents, he continued to exhibit aggressive behavior and several agents were required to take defendant into custody."

We respectfully disagree with the Court's statement of facts, but the purported basis that Christie presents a risk of flight is deficient for several reasons, each justifying reconsideration of the Court's erroneous finding that there is a risk of flight – at least one that cannot be mitigated by the usual terms and conditions of a bail release.

<u>First</u>, there is no "history of resisting law enforcement" in this record, except perhaps for the one isolated incident where the Defendant refused to exit his vehicle after the pre-textual traffic stop by the CHP. That hardly rises to the level of exhibiting a propensity of likelihood to <u>disregard a court order</u> – especially a court release order on terms and conditions of bail with such grave consequences for non-compliance.

<u>Second</u>, this argument simply ignores the complete picture of the defendant which has now been presented. Mr. Christie has no failures to appear. Mr. Christie has never violated terms and conditions of pre-trial release, parole or probation. Indeed, he has no criminal record at all (save for an infraction for disturbing the peace ten years ago) and has never been placed on supervision by the Criminal

---

[3] Respectfully, the FBI's assault on Christie's residence was both overwhelming and unnecessary. They served him with no process – no arrest warrant or search warrant was delivered – and Christie was under no legal compulsion to leave his condo. No one can dispute that he was both scared and understandably paranoid about what the FBI was going to do him at that point. The FBI had already bashed his door down, broken windows and skylights and deployed tear gas or some potentially harm causing substantial. They then called him on the phone and demanded that he leave the house. Was Christie required by law to cooperate with his unannounced arrest by complying? We question that, and indeed he committed no crime in waiting until he had spoken with his attorney and reviewed the search warrant before existing. The government makes a much bigger deal out of his two hour standoff than it merits on its own.

10

Justice System. His record of full compliance with court orders is spotless. He is, by all accounts, a law abiding citizen. Mr. Christie owns a home on which he pays a mortgage: he presently owes $125,000 on a piece of property valued in excess of $660,000 – he has equity that he could post in excess of $500,000. It is inconceivable that Mr. Christie would forfeit his house to prevent a short custodial prison term, even assuming a conviction. He has a steady, long term job – which he expects to lose if not granted bail. He has loving and supportive family who are also willing to post appearance bonds.

Although Mr. Christie has no significant record of foreign travel, he does have a passport, as millions of law abiding citizens do. Does that make him a flight risk? Hardly. Included in the usual terms and conditions would be a requirement that he surrender his passport to PSA, and pledge not to apply for another one.

<u>Third</u> and finally, the argument that Mr. Christie is a flight risk, no less a "serious risk of flight" simply ignores the extraordinarily efficient job that the Court through an exceptionally capable group of Magistrate Judges, aided normally by Pre-trial Services, does every day in federal court. They review and balance such risks and mitigate, if not eliminate any perceived risks by imposing (and enforcing) conditions and combinations of conditions that assure that the defendants will comply with the terms of the pre-trial release -- and make all appearances as ordered by the Court. The Court's record of getting it right in this regard is admirable. The number of defendants who fail to appear after a release order in the CDCA is too small to even estimate. The system normally works.

That is all Mr. Christie asks of this Court on reconsideration. Issue a release order that may (but need not necessarily) include the following conditions that will more than mitigate any actual apprehension by the government, the prosecutors may entertain about risk of flight and dangerousness:

- Intensive PSA supervision
- Travel restricted to CDC and District of Columbia.

11

- GPS monitoring.
- Surrender passport
- Surrender all firearms and any munitions
- Appearance bond signed by brother Michael Christie in whatever amount Court deems is reasonable secured deeding of property – Mr. Christie's residence in which he has $500,000 in equity.
- Obey all laws, including responding to any lawful process the authorities decide to serve on him.

Dated: January 11, 2023

Respectfully submitted,

RICHARDS CARRINGTON LLC
By: /s/ *George B. Newhouse, Jr*
George B. Newhouse, Jr.
Attorneys for Eric Christi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28